In re HORGAN et al. In re REAGAN. BALLOU, U. S. Marshal, v. HORGAN et al.

(Circuit Court of Appeals, First Circuit. December 20, 1907.)

No. 745 (Original).

1. BANKRUPTCY—PROCEEDING AGAINST "ADVERSE CLAIMANT"—JURISDICTION.

A surety on a bail bond of a bankrupt with whom the bankrupt, before the commencement of the bankruptcy proceedings, deposited money to indemnify him against liability, is an adverse claimant of such money, within the meaning of Bankr. Act July 1, 1898, c. 541, § 23, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], and the court of bankruptcy is without jurisdiction to proceed against him summarily therefor without his consent.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, p. 7567.]

2. SAME—CONSENT.

An adverse claimant brought into a court of bankruptcy by citation and ordered to turn over property, and who before entry of final decree against him specially objects on the ground that the court is without jurisdiction, cannot be held to have consented to such jurisdiction.

Patrick P. Curran (Richard B. Comstock and Comstock & Canning, on the brief), for petitioners.

J. Jerome Hahn (Ralph T. Barnefield, on the brief), for respondent.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

COLT, Circuit Judge. This is a petition for revision under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

On August 14, 1907, John T. Reagan was arrested in an action of deceit on a writ issuing from the superior court of Newport county, R. I. On the same day he applied to the petitioners to become sureties upon his bail bond. The petitioners declined unless they were secured against liability, and thereupon he deposited with them $12,000 as security. Reagan knew he was insolvent at this time, but the petitioners were not aware of it.

On August 17th, three days later, an involuntary petition in bankruptcy was filed against Reagan in the District Court for the district of Rhode Island, and on the same day the court issued a special warrant to the marshal, directing him to seize Reagan's property. Under this warrant the marshal made a demand upon the petitioners for $12,000, which they refused to comply with. On August 22d the marshal filed a petition praying that the petitioners be ordered to pay the sum of $12,000 into his hands as receiver, and thereupon the court enjoined the petitioners from disposing of this money until the further order of the court. The court also issued a citation to the petitioners on the petition, returnable August 26th, and the petition was heard by the court on that day.

From the proceedings at this hearing, which are made a part of the record before us, it appears that the District Court took the view that the claim of the petitioners was not adverse, because they were under no obligation on the bail bond which they could not discharge at once by the surrender of their principal, and that, having

first given the petitioners a reasonable time to relieve themselves from their obligation, they should be directed to pay the money into the registry of the court.

On August 29th the counsel for the petitioners asked leave of court to enter their appearance specially for the petitioners, reserving all right to object to the jurisdiction of the court and to its right to proceed on the matters set forth in the petition. At the same time they asked leave of court to file a motion for reargument. The grounds set forth in this motion were that the court had no jurisdiction without the respondents' consent, that the respondents never consented, that the respondents were adverse claimants, and that the court had neither power nor jurisdiction to proceed with or without their consent.

On August 31st Reagan was adjudged a bankrupt, and on the same day the District Court entered the following decree on the petition of the marshal:

"This cause came on to be heard on the petition of Daniel R. Ballou, United States marshal, who has been ordered to seize the property of the alleged bankrupt, that Patrick H. Horgan and Patrick J. Murphy, both of Newport in said district, be ordered and decreed to pay to him, the said Ballou, the sum of $12,000 which is held by said Horgan and said Murphy to secure them against loss by reason of acting as bail in a certain action of deceit brought against said Reagan by Armour & Co.; and thereupon, after a hearing upon the merits and the taking of oral testimony, the said respondents appearing by counsel, and objecting that the court was without power to make the following order upon consideration thereof, it appearing that said sum of $12,000 was deposited by said Reagan with said Horgan and said Murphy on August 14, 1907, at which time said Reagan was insolvent, and that thereafterwards on the seventeenth day of August, 1907, an involuntary petition in bankruptcy was filed against said Reagan, upon which said petition said Reagan was on the thirty-first day of August, 1907, adjudicated a bankrupt, and that, by surrendering the body of said Reagan to the court from which the writ in said action of deceit issued, said Horgan and said Murphy might have been and may be relieved from all obligation as bail, and that by refusing to surrender the body of the said Reagan to the court from which the writ in said action of Armour & Co. was issued and thereby be discharged as bail, said Horgan and said Murphy are, for said bankrupt's sole benefit, causing said $12,000 to be retained from said bankrupt's estate and subject to their own use and control with the liability that should said bankrupt in the future not respond to the execution, if one be issued in said case, that the amount of said bail would be forfeited, and thereby cause a loss of said sum of $12,000 to said bankrupt's estate.

"Wherefore and by reason whereof, it is ordered, adjudged and decreed as follows: That said Patrick H. Horgan and said Patrick J. Murphy, having had reasonable opportunity to discharge themselves from all liability as bail for said bankrupt, and having refused and neglected so to do, be and they thereby are ordered, directed and decreed to pay said sum of $12,000 into the registry of this court on or before September 5, 1907."

The first question we have to consider is whether the District Court had jurisdiction to proceed summarily against the petitioners, or whether resort must be had to a plenary suit. If the petitioners are adverse claimants within the meaning of section 23 of the bankruptcy act, the District Court was without jurisdiction to pass upon their rights in summary proceedings unless with their consent. We have thus presented two questions: First, have the petitioners, in whose hands this fund was deposited to secure them against liability

on a bail bond, such a substantial claim against the fund as to make them adverse claimants within the meaning of section 23 of the bankruptcy act? Second, have the petitioners consented to the jurisdiction of the District Court?

Upon the first question, Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620, is a direct and controlling authority, unless that case can in some way be distinguished from the case at bar. In Jaquith v. Rowley the Supreme Court held that a surety in whose hands money was deposited to indemnify him for his liability on a bail bond was an adverse claimant within the meaning of section 23, Bankr. Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]. In the opinion, Mr. Justice Peckham, speaking for the court, said:

"The proceeding was a summary application to the court in bankruptcy to grant an order in a matter, the result of the granting of which would be to immediately take from the surety moneys which had been deposited with him before the commencement of the proceedings in bankruptcy, and thus compel him to come into the bankruptcy court for the litigation of questions as to his right to retain the money claimed by him. * * * The surety in whose hands the money was deposited to indemnify him for his liability on the bail bond was an adverse claimant within the meaning of that section of the act, and could not be proceeded against in the bankruptcy court unless by his consent, as provided for therein. It is not necessary in order to be an adverse claimant that the surety should claim to be the absolute owner of the property in his possession. It is sufficient if, as in the present case, the money was deposited with him to indemnify him for his liability upon the bail bond and that liability had not been determined and satisfied. If the trustee desire to test the question of the right of the surety to retain the money he must do so in accordance with the provisions of the section of the bankrupt law above referred to. * * * The surety claims the right to hold the money as against everybody until his liability on the bail bond is satisfied, and that claim is adverse to any claim that the trustee may make upon him for the money which is to indemnify him as stated. * * * If the trustee has the right to obtain possession of the money from the surety, he must assert it in accordance with the provisions of section 23 of the bankruptcy act, and not by this summary proceeding in bankruptcy. * * * Our conclusion is that the District Court was without jurisdiction in the matter submitted to it in the petition of the trustee, and its decree dismissing such petition for want of jurisdiction is, therefore, affirmed."

In order to distinguish Jaquith v. Rowley from the case at bar, it is contended by the respondent that in the former case the liability of the bail had already attached. An examination of the record in that case discloses that such is not the fact. It is there shown that judgments only had been rendered against the defendant, and executions issued thereon. On the subject of bail the law of Massachusetts is the same as the law of Rhode Island, and under the law of both states the surety on the bail bond may surrender his principal at any time before final judgment against the surety as bail on scire facias. No such judgment had been entered in Jaquith v. Rowley.

It was open, therefore, for the surety in Jaquith v. Rowley, as in the case at bar, to escape liability by surrendering his principal. Rev. Laws Mass. c. 169, § 9; Gen. Laws R. I. 1896, c. 258, §§ 1, 2. The only other distinction relied upon between the two cases is the length of time which elapsed between the giving of the bail bond and the commencement of proceedings in bankruptcy. We regard

this circumstance as entirely immaterial on the question of the jurisdiction of the District Court to proceed summarily.

It is true the petitioners can relieve themselves of all liability on the bail bond by surrendering the bankrupt, and thereby committing him to jail unless he is able to procure other bail. It is also true that, in the event of such surrender, the petitioners would have no substantial claim against the fund, and the bankruptcy court could seize it in summary proceedings. But it is quite a different proposition whether the bankruptcy court can summarily seize the fund before such surrender, upon the ground that it is the duty of the petitioners to take such action after reasonable notice, because this question of duty involves a question of substantial right. The petitioners claim the right to hold this fund against everybody until their liability on the bail bond has been determined and satisfied, and if this claim is to be tested, it must be in a plenary suit in the federal or the state courts. Jaquith v. Rowley, ante.

Upon the question of consent, it is shown that the petitioners did not voluntarily appear in the District Court, that they objected to the power of the court to make the order at the hearing, and that subsequently, and before the entry of the final decree, they specifically objected to the jurisdiction of the court to proceed summarily. This was clearly sufficient under the decisions of the Supreme Court. Upon this point it is only necessary to cite Louisville Trust Company v. Comingor, 184 U. S. 18, 26, 22 Sup. Ct. 293, 46 L. Ed. 413.

The decree of the District Court is reversed, with costs for the petitioners in this court.