### In re LUMMUS.

#### (District Court, N. D. Georgia. November 6, 1913.)

BANKRUPTCY (§ 293*)—ADVERSE CLAIM TO PROPERTY—JURISDICTION OF COURT OF BANKRUPTCY.

   The fact alone that property was transformed and delivered by a bankrupt to a creditor on the day before the bankruptcy proceedings were commenced against him, and that the creditor knew of the intended proceedings, does not give the bankruptcy court jurisdiction to adjudicate his rights summarily, where it appears that the indebtedness to him was bona fide and he claims the property as purchaser.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

In Bankruptcy. In the matter of W. A. Lummus, bankrupt. On application for a summary order to require Gus Coggins to deliver property to receivers. Denied.

C. L. Harris and L. E. Wisdom, both of Cumming, Ga., and Bell & Ellis, of Atlanta, Ga., for petitioning creditors.

Gober & Jackson, of Atlanta, Ga., for alleged bankrupt.

NEWMAN, District Judge. The facts in this case are that certain creditors of W. A. Lummus and persons interested were having a conference in Atlanta as to the advisability of putting Lummus into bankruptcy, with every indication that they would endeavor to do so. About this time, Coggins, who had been absent out West in connec-

tion with his mule business, arrived in Atlanta and was informed of what was going on. During the day he paid to a bank in Atlanta a note for $1,000 on which he was an indorser for Lummus. He claims that Lummus owed him this $1,000 and a considerable amount in addition thereto.

Coggins and Lummus, who was also in Atlanta, went to the Kimball House, and Coggins told Lummus that he ought to pay him what he owed him, and Lummus sold him the certain buggies, mules, and horses now in controversy.

A memorandum is presented to the court, written on the Kimball House paper, on which appears a list of certain horses and mules, 14 top buggies, and 1 secondhand open buggy; the price being attached to each item and aggregating $1,145. Just below this is the following:

"One note signed by W. A. Lummus and John McClure for $1,000.00, 8 Hundred due Gus Coggins for mules."

This is said to be a memorandum of the sale by Lummus to Coggins of this property for the amount named, $1,145.

Of course, it is perfectly plain that the effort was for Coggins to get as much on the debt he claimed against Lummus before the property could be taken into possession by the court. That night the property was turned over by Lummus' representative to Coggins' representative and taken from Alpharetta, Ga., where Lummus' place of business was, to Canton, Ga., where Coggins lived and had a place of business.

This is a summary proceeding to require Coggins to turn over the property so received to the receivers appointed by the court for Lummus' estate, against whom, the next day after this transaction occurred, a petition in bankruptcy was filed and receivers appointed.

The sole question at the threshold of this matter is whether Coggins is an adverse claimant within the meaning of the law.

I have recently had this question before me in the case of In re Spalding Cotton Mills (D. C.) 193 Fed. 554. An examination of that case will therefore show the view entertained by this court as to the distinction between an adverse claimant and one whose claim is merely colorable.

In the case of In re Teschmacher & Mrazay (D. C.) 127 Fed. 728, the first headnote states the opinion of the court on the question involved here, which is as follows:

"Where a third person claims property alleged to belong to a bankrupt, a court of bankruptcy has only jurisdiction to inquire summarily as to whether the property is held by the person in possession as the bankrupt's agent, or mere representative; and if, on such inquiry, the court is satisfied that a real adverse claim exists, such claim must be determined in a plenary suit in the state or federal court."

In the opinion this is said:

"It follows therefore that as the testimony taken by the referee discloses that Gerenday is making a real, and not merely a colorable, claim to the ownership of the property in dispute, he is entitled to have his contention examined and judged according to the ordinary and regular process of the law, unless his consent to the summary proceeding before the special referee has

bound him irrevocably to go on with it to the end. It is well settled that mere consent cannot give jurisdiction."

In the case of In re Adams (D. C.) 130 Fed. 788, the opinion, which is very short, is as follows:

"The claim of Nass that, before the filing of the petition in bankruptcy, he had received the property in question as part payment of a debt, and that he had no reasonable cause to, believe that it was intended thereby to give a preference, was clearly an adverse claim. In re Hartman (D. C.) 10 Am. Bankr. Rep. 387, 121 Fed. 940. The referee, however, found as facts that the taking of possession by Nass was without authority from Adams; that Nass knew, or had reasonable cause to know, that the taking constituted a preference; and that the taking of the property was equivalent to trover and conversion, and carried no title; that, in consequence thereof, Nass had not even a colorable claim to title. This was not a decision that, upon the facts as claimed by Nass, he was not an adverse claimant, nor an inquiry into the existence of an adverse claim; but a decision of the merits of an adverse claim of right, and a finding that the claim was not adverse because, in the opinion of the referee, it was not, as a matter of evidence meritorious in point of fact. As it is clear from the report of the referee, and from his decree, that Nass was, properly speaking, an adverse claimant, the referee, upon objection, should have declined to finally adjudicate the merits of the case on a summary petition. Mueller v. Nugent, 184 U. S. 1, 15, 22 Sup. Ct. 269, 46 L. Ed. 405; Louisville Trust Co. v. Comingor, 184 U. S. 18, 25, 22 Sup. Ct. 293, 46 L. Ed. 413; Jaquith v. Rowley, 188 U. S. 620, 625, 23 Sup. Ct. 369, 47 L. Ed. 620; In re Tune (D. C.) 115 Fed. 906."

This whole matter depends, of course, upon the decision of the United States Supreme Court in Mueller v. Nugent, 184 U. S. 1, 15, 22 Sup. Ct. 269, 275 (46 L. Ed. 405). In the opinion by Chief Justice Fuller in that case, in discussing the very question we now have, the following language is used:

"The position now taken amounts to no more than to assert that a mere refusal to surrender constitutes an adverse holding in fact, and therefore an adverse claim when the petition was filed, and to that we cannot give our assent. But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real even though fraudulent, and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits."

Counsel for the receivers in this case cites the case of In re Friedman (D. C.) 18 Am. Bankr. Rep. 713, 153 Fed. 939, affirmed by the Circuit Court of Appeals (20 Am. Bankr. Rep. 37, 161 Fed. 260, 88 C. C. A. 306), the first headnote of which is as follows:

"If property formerly in the possession of the bankrupt, is found in the possession of any other person, and such person is, in the opinion of the court, very clearly but a cover or receptacle for that property, which, as between the bankrupt and such other person, is still the property of the bankrupt, or such other person is but the alter ego of the bankrupt, then a summary order to turn over is proper, and no pretended instruments or transfer, no apparatus of conveyances, should prevail."

Certainly this is true, and that is the effect of the decision in Mueller v. Nugent, supra.

The main ground, apparently, relied upon by counsel for the receivers, at least one of the grounds, is that the books of the bankrupt were sent with the buggies and live stock to Canton; it further appearing that there is no account on the books of the bankrupt, which have since been sent back, with Coggins. This whole transaction looks suspicious, of course; but the facts remain that there was a sale, or an attempted sale, by Lummus to Coggins on the day before the bankruptcy proceedings were commenced, that Coggins took the property and had the same in his possession at the time the bankruptcy proceedings were instituted, and at the time this rule seeking to recover the property by summary order was applied for, that Coggins produced his books in court and showed an account with Lummus, apparently regularly kept, which showed large transactions between them for the purchase and sale of live stock, and that there is a real adverse claim on the ground that he bought the property as stated.

This property cannot be recovered by summary proceedings on the mere suspicion raised by the haste with which the alleged sale was accomplished and the goods were delivered, and what occurred with reference to Lummus' books. This would be in the teeth of all the decisions on this subject which I have been able to find, and even reversing the conclusions reached by this court in the case of In re Spalding Cotton Mills, above referred to.

Of course, the denial of this application is without prejudice in any way to the right of the trustee, when elected, to proceed, as he may be advised, by plenary proceeding to set aside this sale and recover the property. There may be a little delay about such a proceeding, but there would be no question that justice and the rights of the parties would be subserved, while under this proceeding they cannot be.

The application for a summary order is denied, and the petition dismissed, without prejudice.