## In re UITTENBOGARD. *

### JENKINSON v. FIRST NAT. BANK OF SHELDON, IOWA, et al.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1924.)

#### No. 6320.

Bankruptcy ⬅288(1)—Referee held without jurisdiction by summary order to require payment of money by adverse claimant.

The fact that a bank, acting in good faith, under an agreement with bankrupt by which it became guarantor of such payment, received and paid out money of bankrupt on the day, and after, he filed a voluntary petition in bankruptcy, but without knowledge of that fact, did not give a referee jurisdiction by summary order to require the bank to pay over to the trustee the amount so expended, which could only be recovered, if at all, by a plenary suit.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

In the matter of the estate of Harry Uittenbogard, bankrupt, William Jenkinson, trustee, appeals from order of the District Court denying his petition against the First National Bank of Sheldon, Iowa, and others. Reversed, with direction to dismiss petition for want of jurisdiction.

Peter Balkema, of Sioux City, Iowa (G. A. Gibson, of Sheldon, Iowa, on the brief), for appellant.

O. H. Montzheimer, of Primghar, Iowa (G. T. Wellman, of Sheldon, Iowa, on the brief), for appellees.

Before KENYON, Circuit Judge, and TRIEBER and MUNGER, District Judges.

TRIEBER, District Judge. This is a proceeding instituted by the appellant as trustee in bankruptcy of the estate of Harry Uittenbogard, a bankrupt, by a petition to the referee in bankruptcy, to whom the said bankruptcy proceeding had been referred, for a summary order requiring the appellee, the First National Bank of Sheldon, Iowa, to turn over to him the sum of $1,580.19 in cash, in its possession and which it is alleged is the property of the bankrupt. The bank in its answer to the petition, reserving all exceptions to the proceeding, denied that the money in its hands belonged to the bankrupt, or that it had any moneys in its possession or under its control belonging to the bankrupt, but that this money is its own.

The referee, after a hearing, found that this sum was the property of the bankrupt and made an order directing the bank to pay it to the trustee.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied April 22, 1924.

On a petition for review, in which the bank attacked the jurisdiction of the referee to entertain the summary proceeding and also his findings and order, the District Court reversed the order of the referee, without passing on the jurisdiction of the referee to proceed summarily, but held that, on the facts, the bank is not liable. To reverse this order of the court the trustee prosecutes this appeal. If the claim of the bank that the proceedings before the referee were without jurisdiction is sustained, they are absolutely void, and the court, on the petition for review, was without power to determine the facts, except for the purpose of determining the jurisdiction of the referee to entertain the petition of the trustee in a summary proceeding.

As the moneys claimed by the trustee were in the possession of the bank and claimed by it, in good faith, and it had reasonable cause to make this claim, as was found by the District Court when it set aside the order of the referee, the trustee could only recover, if at all, in a plenary proceeding in a court of competent jurisdiction. The authorities to that effect are numerous. The latest decision by the Supreme Court is Galbraith v. Vallely, 256 U. S. 46, 41 Sup. Ct. 415, 65 L. Ed. 823, following and approving Louisville Trust Co. v. Cominger, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, a leading case on that point. Black on Bankruptcy, § 403. And this has been the ruling of this court. In Mound Mines Co. v. Hawthorne, 173 Fed. 882, 885, 97 C. C. A. 394, it was held:

"The law is now settled that the interest of a third party in property claimed to belong to the bankrupt estate, which, at the time of the institution of the proceedings in bankruptcy, is in the possession of such third person claiming an interest therein, can only be determined by an original suit brought for that purpose. Where, however, property which is in the possession of a bankrupt at the time of the bankrupt proceedings, and passes as part of his estate into the possession of the trustee in bankruptcy, and a third party claims an interest therein, the referee may, by a summary proceeding, require such third party to appear in the bankrupt court, present his claim, and the referee adjudicate the rights of the parties in respect thereof"—citing numerous authorities.

The same conclusion was reached by this court in Re Gill, 190 Fed. 726, 728, 111 C. C. A. 454; Shea v. Lewis, 206 Fed. 877, 882, 883, 124 C. C. A. 537.

It is doubtful whether even consent would give jurisdiction to proceed summarily. Louisville Trust Co. v. Cominger, supra; In re Walsh Bros. (D. C.) 163 Fed. 352, 357. But it is insisted that as on the day of the sale, and before the proceeds were received by the bank, the bankrupt had filed his petition in bankruptcy, this was a caveat to all the world, and therefore the money passed to the trustee, although the bank had no notice of the filing of the petition at the time of the sale and the receipt of the proceeds. That for that reason it may be recovered in a summary proceeding before the referee, relying on the authorities above cited. This contention is without merit.

The evidence is undisputed and establishes the following facts: Harry Uittenbogard, the bankrupt, had, for a number of years, been engaged in breeding and selling young thoroughbred hogs on his farm near Sheldon, Iowa. As is customary in that business, he put on four

sales each year, which were extensively advertised at an expense of over $1,500 to $2,000. On November 1, 1920, he was indebted to the appellee bank in a large sum of money secured by a mortgage on his farm, and later also by a mortgage on personal property. At the time the bankrupt also owed considerable money to creditors who were unsecured. The bankrupt and the bank agreed that it would be advisable to put on a sale of hogs on November 13th, so as to be ahead of the grand circuit of hog sales. The bank thereupon made an agreement with Henry & Barker, who were auctioneers, that they should conduct the sale, advertise it extensively, take possession of the hogs, and feed them; the sale to be advertised in their name. Henry & Barker being unwilling to furnish the money which would be necessary for the purpose of advertising the sale, and feeding the hogs, and the bankrupt being unable to furnish the money, the appellee bank guaranteed all these expenses and the auctioneers' commissions. This proposition was agreed to by the bankrupt. The hogs remained on the bankrupt's farm until the evening of the 12th of November, but the possession had been turned over to Henry & Barker on November 1st, and all the expenses of taking care of them, and the auctioneers' commissions of sale guaranteed to them by the bank with the consent of the bankrupt. That evening they were carried to the public sales pavillion at Sheldon, Iowa, and the next morning the sale took place.

At 10 o'clock of the morning of the sale, the bankrupt filed a voluntary petition in bankruptcy and was adjudicated as such. The sale progressed, however, without any knowledge on the part of the bank or Henry & Barker of the proceedings in bankruptcy. The sale was conducted by the auctioneers, the bank acting as clerk, receiving the proceeds of the sale, which amounted to $16,000. The expenses incurred by Henry & Barker, for which the bank was liable, amounted to $1,580.19, all of which had been incurred before the petition in bankruptcy was filed, although not paid until later. The bank paid to the trustee all of the money realized from the sale, except $1,580.19, which it claimed was its own money for the expense incurred in making the sale. At the hearing counsel for the trustee admitted that the bank should be allowed the sum of $641.44 money assumed by it for feeding the hogs, but insisted that the bank is liable to the estate for the advertisements and the commission paid to the auctioneers, aggregating $963.60. Notwithstanding this admission, the referee directed the bank to pay to the trustee the entire $1,580.19.

As the hogs had been delivered to the auctioneers under the agreement between the bankrupt and the bank with them on November 1st, and the expense of advertising and selling necessarily incurred by the bank, the delivery of the hogs to Henry & Barker was a pledge for these expenses, and the bank had a right to retain this money. Its claim that it had no moneys in its possession belonging to the bankrupt was a substantial adverse claim, made in good faith. It may as well be claimed that, if a person consigns a carload of live stock to a commission merchant, who has agreed to pay the charges of the loading, feeding while in transit, the wages of the caretaker, while the

stock was being transported, and the charges of the carrier, and while the livestock was being transported, the shipper files a petition in bankruptcy, and the commission merchant, without knowledge of the proceedings in bankruptcy pays these charges, as he had agreed to do, and sells the stock consigned and thereafter pays to the trustee the proceeds of the sale, less the sums paid out under his agreement and his commissions for making the sale, that such a commission merchant could be required to pay to the trustee in a summary proceeding, the money thus advanced by him on the faith of his agreement with the shipper. If there is any liability of the commission merchant upon such a state of facts, he claiming, in good faith, to hold these sums adversely, he is beyond question only subject to a plenary suit in a court of competent jurisdiction.

The District Court should have first passed on the jurisdiction of the referee to proceed summarily in order to determine whether there is reasonable ground to sustain the bank's claim that it is entitled to retain the money in controversy, and that the adverse claim is made in good faith.

As the evidence clearly established that the claim of the bank, to hold the money adversely to the trustee, was made in good faith, the court should have set aside the proceedings before the referee and his order therein for want of jurisdiction.

The judgment is reversed, with directions to dismiss the petition of the trustee; the costs of this court to be taxed against the appellant.