**SCHAFFER v. HUGHES et al.**

**GARDNER et al. v. SAME.**

**Nos. 12549, 12550.**

Circuit Court of Appeals, Eighth Circuit.

Dec. 14, 1943.

Rehearing Denied Jan. 5, 1944.

John R. Stockham, of St. Louis, Mo. (Roscoe Anderson, W. R. Gilbert, and Anderson, Gilbert, Wolfort, Allen & Bierman, all of St. Louis, Mo., on the brief), for appellant A. H. Schaffer.

Edward W. Tobin, of St. Louis, Mo. (Harry S. Gleick, of St. Louis, Mo., on the brief), for Henry C. Hughes, trustee, etc.

Crawford Johnson, of St. Louis, Mo. (Bryan, Williams, Cave & McPheeters, of St. Louis, Mo., on the brief), for Russell E. Gardner, Jr., and others.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

Two appeals are presented on one record. No 12,550 is by individuals doing business as copartners in the partnership name of Reinholdt and Gardner; No. 12,549 is by A. H. Schaffer.

The appeal by Reinholdt and Gardner is to reverse the part of a decree entered in summary proceedings in the bankruptcy of G. A. Gantz and Company which ordered the appellants to turn over to the trustee in bankruptcy certain cash and securities in their possession and to submit whatever claims of interest they asserted therein to the determination of the bankruptcy court and which restrained prosecution by them of action in the state court to obtain such determination. The parties here are the same as in a prior case where Reinholdt and Gardner were plaintiffs and A. H. Schaffer and Henry C. Hughes, trustee, were defendants, which we considered on appeal in Gardner v. Schaffer, 8 Cir., 120 F.2d 840, and the controversy here arises out of the same transactions between this appellant, A. H. Schaffer, and the bankrupt G. A. Gantz and Company, alleged in the complaint in that case and described in the opinion of this court on that appeal.

The decree dismissing the action of Reinholdt and Gardner which we reviewed at their instance on that appeal was entered in a plenary action brought by them in the federal district court in which they set up their possession of the same cash and securities belonging to the bankrupt involved in these proceedings, and in which they described their claim of right to retain such possession and sought to compel interpleader of the trustee in bankruptcy and A. H. Schaffer, alleged claimants, and to obtain adjudication of the rights of the parties in respect to the cash and securities, and appropriate remedy. But it was decided by the district court, and on the appeal by this court, that Reinholdt and Gardner had mistaken their forum and that the federal district court was without jurisdiction to adjudicate the conflicting claims described in the complaint because there was no diversity of citizenship between the parties and no federal question was involved.

The decree here appealed from was predicated upon a petition in summary proceedings filed in the bankruptcy court by the trustee against Reinholdt and Gardner and A. H. Schaffer after our decision had been entered. Following our decision Schaffer had brought suit in the state court against Reinholdt and Gardner upon the check issued by them to the bankrupt and endorsed and delivered by the bankrupt to him, as described in our opinion. In that suit Reinholdt and Gardner had appeared and prayed to have the trustee in bankruptcy made a party. The petition filed by the trustee asserted paramount jurisdiction in the bankruptcy court in summary proceedings to issue its turn-over order and adjudicate the controversies. The parties responded and appeared at the hearing before the bankruptcy court. In their response the appellants Reinholdt and Gardner alleged the same facts and asserted the same claim of right to retain possession of the bankrupt's cash and securities in their hands summarized in Gardner v. Schaffer, supra. They also denied the jurisdiction of the bankruptcy court in the summary proceedings. In his response Schaffer also challenged the jurisdiction in the summary proceedings. He admitted that he had brought suit against Reinholdt and Gardner on the check issued by them to the bankrupt and endorsed and received in due course by him, but denied that he had received unlawful preference and insisted that he had a right to maintain the action against Reinholdt and Gardner on the check. The facts concerning the transactions between the bankrupt, these appellants and A. H. Schaffer, were developed by the pleadings, stipulations and oral testimony considered by the court, and the findings, conclusions and decree were drawn with meticulous care. There was but little dispute of fact. But again on this appeal, as on the former appeal, we are confronted with the question of jurisdiction. In the former case it was a question of the jurisdiction of the federal court in the absence of diversity of citizenship and of controversy arising under federal law. Here it is a question of the jurisdiction of the bankruptcy court in summary proceedings.

It clearly appears that at the date of bankruptcy of G. A. Gantz and Company the appellant partnership had in its possession the securities and cash belonging to the bankrupt which are referred to in the turn-over order appealed from, and that such securities and cash were in a margin brokerage account kept pursuant to a written agreement between appellants and the bankrupt to the effect that they were to be held by appellants as security for the payment of all liabilities of the bankrupt to the partnership "however and whenever arising." It also appears that two days before the bankruptcy Reinholdt and Gardner made a loan to the bankrupt in the form of a check payable to the order of the bankrupt "for the account of A. H. Schaffer" and that the bankrupt endorsed and delivered the check to Schaffer before bankruptcy. Although appellant stopped payment on the check, Schaffer had it, and claimed to be the holder of it in due course and that appellants were legally obligated to pay it.

It is also clear that if appellants should be compelled to pay the check, then, and in that event, the amount so paid would be chargeable to G. A. Gantz and Company in the margin brokerage account as a debt owing by Gantz and Company to appellants, properly to be included among the debts which it had been agreed should be secured by the cash and securities of the bankrupt in Reinholdt and Gardner's possession.

Although these appellants at the time of bankruptcy made no claim of any present existing debt then owing by the bankrupt to them, and they admitted that the cash and securities in their hands belonged to the bankrupt, they claimed the right to retain possession of the cash and securities to secure them against the contingency of being compelled to pay the check outstanding in Schaffer's hands.

In summary proceedings to recover property in the possession of a third party and held adversely to the bankrupt estate the bankruptcy court had undoubted jurisdiction to adjudicate the merits summarily and require surrender of the property where the asserted claim is merely colorable, but if the claimant is in actual possession of the property at the time of the bankruptcy and in good faith and with reasonable cause claims the right to hold it adversely to the claim of the trustee in bankruptcy, a summary proceeding will not lie to determine the right of the trustee to recover possession of the property and only by plenary proceedings can the question be determined. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; Shea v. Lewis, 8 Cir., 206 F. 877; Johnson v. Doebler, 8 Cir., 275 F. 822; Jenkinson v. First National Bank of Sheldon, 8 Cir.,

295 F. 778; In re Rathman, 8 Cir., 183 F. 913; Johnston v. Spencer, 8 Cir., 195 F. 215; Marcell v. Engebretson, 8 Cir., 74 F. 2d 93, 96, 97, certiorari denied 296 U.S. 579, 56 S.Ct. 89, 80 L.Ed. 409; Thompson v. Terminal Shares, Inc., 8 Cir., 104 F.2d 1, 5, 9, certiorari denied 308 U.S. 559, 60 S.Ct. 100, 84 L.Ed. 470.

■■ We think it is well settled that one who holds property of a bankrupt under substantial claim of right to be secured thereby against actual contingent liability asserted on substantial grounds in good faith holds adversely to the trustee and may not be subjected to turn-over order in summary proceedings. Such summary jurisdiction does not extend to determination of such actual and substantial adverse claims, even though the liability asserted is contingent. Jaquith v. Rowley, 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620; In re Horgan, 1 Cir., 158 F. 774; In re Squier, D.C., 165 F. 515; In re Detroit Waterproof Fabric Company, D.C., 295 F. 338; In re Horgan, 1 Cir., 164 F. 415.

In Jaquith v. Rowley, supra, the bankrupt, against whom two suits had been filed, deposited with the surety sums to indemnify him on two bail bonds if the bankrupt avoided the bonds. The plaintiffs in the two suits took judgments by default in the state court. The trustee filed a petition in the district court against the plaintiff in the two suits and the surety asking that the plaintiffs be enjoined from collecting the judgments or making any levy under the execution, that the surety be ordered to pay over to the trustee the funds deposited in its hands and also that the plaintiffs be ordered to appear before the referee in bankruptcy and prove their claims against the estate and establish their liens, if any, upon the funds paid over to the trustee by the surety. The court denied the petition for want of jurisdiction only and allowed an appeal to the Supreme Court. It was held that the district court did not have jurisdiction to a summary proceeding on the petition of the trustee to compel the surety to turn the money over to the trustee in bankruptcy. The court stated [188 U.S. 620, 23 S.Ct. 371, 47 L.Ed. 620]:

"The proceeding was a summary application to the court in bankruptcy to grant an order in a matter, the result of the granting of which would be to immediately take from the surety moneys which had been deposited with him before the commencement of the proceedings in bankruptcy, and thus compel him to come into the bankruptcy court for the litigation of questions as to his right to retain the money claimed by him. It would also enjoin the plaintiffs in the state suits from proceeding to collect their judgments from the surety in the bail bonds. To extend such a jurisdiction over an adverse claimant would be within the prohibition of § 23, a and b [11 U.S.C.A. § 46, subs. a, b], whether such jurisdiction were exerted by an action strictly so-called or by a summary application to the court in bankruptcy. It is the exercise of jurisdiction which the section prohibits, and the particular method of procedure in the court is immaterial. The surety in whose hands the money was deposited to indemnify him for his liability on the bail bond was an adverse claimant within the meaning of that section of the act, and could not be proceeded against in the bankruptcy court unless by his consent, as provided for therein. It is not necessary, in order to be an adverse claimant, but the surety should claim to be the absolute owner of the property in his possession. It is sufficient if, as in the present case, the money was deposited with him to indemnify him for his liability upon the bail bond, and that liability had not been determined and satisfied. If the trustee desires to test the question of the right of the surety to retain the money, he must do so in accordance with the provisions of the section of the bankruptcy law above referred to.

" * * * The surety claims the right to hold the money as against everybody until his liability on the bail bond is satisfied, and that claim is adverse to any claim that the trustee may make upon him for the money which is to indemnify him as stated. * * * If the trustee has the right to obtain possession of the money from the surety, he must assert it in accordance with the provisions of § 23 of the bankruptcy act, and not by this summary proceeding in bankruptcy.

"The plaintiffs in the suits in the state court had the right to proceed to judgment in that court and to collect their judgments against the surety on the bail bond, and the court in bankruptcy had no power to prevent such proceedings in suits over which the state court had full cognizance."

In Re Horgan, supra, the bankrupt deposited $12,000 as security with sureties upon his bail bond. Subsequent to the filing of an involuntary petition in bankruptcy against the bankrupt in the district

court, the marshal filed a petition praying that the sureties be ordered to pay the sum of $12,000 into his hands as receiver. The court enjoined the sureties from disposing of the money until further order of the court. After the adjudication of bankruptcy, the court entered a decree on the petition of the marshal directing the sureties to pay $12,000 into the court. On appeal, the circuit court said [158 F. 775]:

"The first question we have to consider is whether the District Court had jurisdiction to proceed summarily against the petitioners, or whether resort must be had to a plenary suit. If the petitioners are adverse claimants within the meaning of section 23 of the bankruptcy act, the District Court was without jurisdiction to pass upon their rights in summary proceedings unless with their consent. We have thus presented two questions: First, have the petitioners, in whose hands this fund was deposited to secure them against liability on a bail bond, such a substantial claim against the fund as to make them adverse claimants within the meaning of section 23 of the bankruptcy act? Second, have the petitioners consented to the jurisdiction of the District Court?

"Upon the first question, Jaquith v. Rowley, 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620, is a direct and controlling authority, unless that case can in some way be distinguished from the case at bar. In Jaquith v. Rowley the Supreme Court held that a surety in whose hands money was deposited to indemnify him for his liability on a bail bond was an adverse claimant within the meaning of section 23, Bankr.Act July 1, 1898.

\*   \*   \*   \*   \*

"It is true the petitioners can relieve themselves of all liability on the bail bond by surrendering the bankrupt, and thereby committing him to jail unless he is able to procure other bail. It is also true that, in the event of such surrender, the petitioners would have no substantial claim against the fund, and the bankruptcy court could seize it in summary proceedings. But it is quite a different proposition whether the bankruptcy court can summarily seize the fund before such surrender, upon the ground that it is the duty of the petitioners to take such action after reasonable notice, because this question of duty involves a question of substantial right. The petitioners claim the right to hold this fund

against everybody until their liability on the bail bond has been determined and satisfied, and if this claim is to be tested, it must be in a plenary suit in the federal or the state courts."

In Re Squier, supra, Ferdinand Gutmann & Co. had brought two suits against a corporation and two individuals and had obtained attachments and levied on the property of one of the individuals. Squier, being desirous of becoming surety for the release of these attachments, made an agreement with the Windsor Trust Company and with Ferdinand Gutmann & Co. whereby Squier deposited 150 shares of stock with the Windsor Trust Company to be held to await the outcome of the two suits. Squier was subsequently thrown into bankruptcy, and the receiver in bankruptcy made an application in the district court to compel the Windsor Trust Company to turn over to the receiver the stock certificates and for an adjudication that Ferdinand Gutmann & Co. had no claim to the shares of stock. The court stated [165 F. 516]:

"Both the Windsor Trust Company and Ferdinand Gutmann & Co. have appeared upon this motion, and have objected to the jurisdiction of this court, and contend that a question of title is involved which cannot be disposed of summarily; while the receiver insists that the property pledged or deposited was that of the bankrupt, over which this court has complete jurisdiction, and that title did not pass by the agreement in question, a copy of which is submitted. The Windsor Trust Company and Ferdinand Gutmann & Co. further contend that they have the right to follow the security by means of which property under attachment is released, even though the attachment itself be vacated by bankruptcy, and the claim under which the process of attachment was obtained be included in the schedules of the bankrupt as a debt from which he would be released by a discharge in bankruptcy.

"\*   \*   \*   It is not a question whether this court thinks that the attachment could be vacated, or that the security for the release of the attached goods would also be vacated, but rather whether this court finds the third party in possession, holding by a claim of title. This the Windsor Trust Company certainly does, and the case would seem to be similar to that of In re Mayer, [2 Cir.], 157 F. 836, 85 C.C.A. 200, and In re Bailey, D.C., 156 F. 691, no element of

fraud, upon which the transaction could be avoided, appearing on the present record."

In Rockmore v. New Jersey Fidelity & Plate Glass Insurance Co., 2 Cir., 65 F.2d 341, 342, the defendant insurance company wrote liability insurance under a contract with a brokerage company covering the taxicabs of the M. C. T. Company, a subsidiary of the Parmalee Transportation Company. The contract provided for insurance for all subsidiaries of the Parmalee company, and further provided that various companies would deposit with the insurance company, subject to the joint control of the insurance company and the brokerage company, amounts sufficient to cover all claims, such deposits being termed a "joint loss fund." The M. C. T. Company had, prior to bankruptcy, deposited some $300,000 in this fund and the trustee brought action in the district court to recover the amount so deposited. The court held that there was a lack of diversity of citizenship so that federal jurisdiction did not exist unless the action was a suit concerning property in the constructive possession of the bankruptcy court so as to support the summary jurisdiction of the bankruptcy court. The court stated:

"He [the trustee] asserts that he is vested with title to and is in constructive possession of cash and securities representing the contributions of the bankrupt to the 'Joint Loss Fund.' * * * But the present suit is not a 'proceeding in bankruptcy' relating to property in the actual or constructive possession of the trustee. It is rather an ordinary suit between the trustee and an adverse claimant.

"The contract between New Jersey Fidelity and Alpha [the brokerage company] is incorporated in the bill of complaint and shows that the deposits by M. C. T. Co., Inc., were to indemnify New Jersey Fidelity for losses under the insurance policies which it had written. There is nothing to indicate that liabilities under these policies are not still outstanding. It is alleged that the trustee in bankruptcy has demanded that the defendants New Jersey Fidelity and Alpha turn over to him cash and securities representing the $327,000 contributed by M. C. T. Co. Inc., and that the defendants have refused to do this. Their refusal and the terms of the contract under which the deposits were made indicated that they were holding the property under an adverse claim and warrant the conclusion that they were not holding it as mere bailees or agents."

In Re Detroit Waterproof Fabric Co., supra, the bankrupt was indebted to a bank in the sum of $63,000. He entered into an agreement with the petitioner whereby the petitioner guaranteed payment of such indebtedness, and to secure petitioner against loss under the guarantee the bankrupt executed and delivered to petitioner a chattel mortgage covering certain of petitioner's property. The mortgage provided that during the continuance of the guarantee the mortgagor would keep the mortgaged property insured against loss by fire in the name of the mortgagee in such sum and with such companies as the latter might approve. The mortgaged property was insured by the mortgagor for $150,000 and then was destroyed by fire. Subsequently a petition in bankruptcy was filed against the mortgagor, and it was adjudged a bankrupt. The petitioner filed a bill of complaint in the state court praying that it be decreed to have a lien on the proceeds of the policies to the extent of the amount of the liability under the guarantee, that the insurance companies be decreed to pay to it so much of the proceeds of the policies as should be necessary to reimburse petitioner for loss under the guarantee, and that the insurance company be enjoined from paying the proceeds of the policy to the trustee in bankruptcy until satisfaction of the claim of petitioner therein.

The trustee in bankruptcy filed with the referees in bankruptcy of the district court a petition praying that petitioner be required to show cause why it should not surrender to trustee the insurance policies involved and why it should not be required to file a petition with the referees for the determination of its claim to the proceeds of the policies. An order to show cause was granted as prayed. Petitioner filed with the referees a motion to dismiss the trustee's petition on the ground that the rights involved could be tried only in a plenary suit. The motion being denied, petitioner filed its answer to the order to show cause, again denying the jurisdiction of the bankruptcy court, referring to the suit already instituted in the state court for the enforcement of the claimed lien and claiming the right to possession of the policies under the lien. An order was entered directing petitioner to surrender the insurance policies. On review the court stated [295 F. 342]:

"The question, however, now involved is not whether the trustee or the petitioner is

444

entitled to possession of these policies, but whether the trustee is entitled to litigate, as it has attempted to do, its claim to the right of possession thereof by summary proceedings in the bankruptcy cause. The question to be determined at the present time is not a question of title but one of remedy. If the trustee were in possession of the insurance policies, or if the petitioner or any other person were holding possession thereof merely for, or under, the bankrupt or the trustee as its successor in interest, such summary proceedings would be the proper procedure for adjudication of the conflicting claims concerning such policies. As, however, the petitioner is, and at the time of the filing of the bankruptcy petition herein was, in actual possession of the policies in controversy, and asserting a claim (not simply colorable but of a substantial character) to the right to hold such possession in its own interest and adversely to the bankrupt and to the trustee, petitioner is an adverse claimant, and its rights as such cannot, against its consent, be tried in this summary proceeding, but only in a plenary suit in a court of competent jurisdiction. (Citations)

"It was further held by the referee that the petitioner was 'a lien claimant and not an adverse claimant.' The fact, however, that a person in possession of property claims only a lien on, and not title to, such property cannot affect the legal capacity and status of such person as an adverse claimant, but in either case the latter is entitled to insist that its rights be litigated in a plenary suit outside of the bankruptcy proceedings. (Citations)."

The appeal of A. H. Schaffer is to reverse the decree entered in the summary proceedings in so far as it enjoined him from maintaining his action against Reinholdt and Gardner on the check issued by them to the bankrupt and endorsed and delivered to him, and in so far as it required him to propound before the Referee in Bankruptcy in the summary proceedings any claim he may have or assert "in or as to" the assets of estate of the bankrupt.

■ The petition of the trustee in bankruptcy contained allegations to the effect that Schaffer had been either a stockholder in or a creditor of the bankrupt corporation and an intimate personal friend of its president, and that Reinholdt and Gardner had been induced by the bankrupt's president to issue the check for the account of Schaffer and charge the amount against the account of the bankrupt through conspiracy and collusion between the president and Schaffer in anticipation on their part of the bankruptcy and for the purpose of defrauding creditors. But stipulations entered into by the parties to the proceedings disclosed clearly that there were transactions in regular course of business between the parties to which the check was directly related. Schaffer as a customer of the bankrupt ordered a short sale of 100 shares of Chrysler Corporation common stock and made a marginal deposit of about fifty percent of the list price of the stock with the bankrupt to cover the deal. The short sale was made through Reinholdt and Gardner as agents for the bankrupt. Thereafter, before bankruptcy, it was closed out at a profit of $20 and Schaffer became entitled to receive his deposit and the profit back from the bankrupt. The bankrupt obtained Reinholdt and Gardner's check for $3,520 "payable to G. A. Gantz and Company for the account of A. H. Schaffer" and endorsed and delivered the same to Schaffer in order to effect a return of the deposit and the profit to Schaffer. Schaffer's claim of right to receive the check therefore did not rest merely on conspiracy or collusion between him and the bankrupt's president.

Schaffer also claimed that the negotiation and delivery of the check to him did not constitute an unlawful preference. As the bankrupt was a stock broker the administration of the estate was governed by Sec. 60, sub. e, 11 U.S.C.A. § 96, sub. e (1, 2, 3, 4, 5) of the Bankruptcy Act as amended and Schaffer's contention was, and is, that it can be spelled out of the facts as a matter of law in the light of the statute that he was entitled to receive the check which is all that he did receive from the bankrupt without obligation to account for it as an unlawful preference. His argument on the point and the traverse cover many pages of the briefs. Reinholdt and Gardner in no way aided Schaffer in his contentions, but they point out that although the trustee alleged in his petition that their stoppage of payment on their check "was effective", he did not pray, and it was not ordered, that the check be surrendered or cancelled. They insist that as their check was negotiated by the payee and so passed into the hands of Schaffer before payment was stopped and remains in his hands, they cannot be relieved of their contingent liability except upon adjudication by a court of competent jurisdiction. Neither can they be secured, as their contract with the bank-

rupt entitles them to be secured, without keeping the securities in their possession.

 The fact that property held by a third person is allegedly withheld from the bankrupt estate as a result of a fraudulent and preferential transfer does not entitle a bankruptcy court to summarily require that the property be turned over. Cooney v. Collins, 8 Cir., 176 F. 189; Johnston v. Spencer, 8 Cir., 195 F. 215; Shea v. Lewis, 8 Cir., 206 F. 877; Harrison v. Chamberlin, supra; Brenner v. Sawyer, 1 Cir., 24 F.2d 167; In re White Satin Mills, Inc., D.C.Minn., 25 F.2d 313; In re American Fidelity Corporation, Ltd., D.C., 28 F.Supp. 462; In re Lummus, D.C., 214 F. 891. The question whether a creditor obtained a preferential or fraudulent transfer is not apposite to the issue of whether the creditor was an adverse claimant. In re Vallozza, D.C.N.J., 225 F. 334. As stated in Shea v. Lewis, supra [206 F. 881]: "Such a claim may be adverse and substantial, even though in fact fraudulent and voidable." And where the claimant's claim of right to the property is substantial, though fraudulent or voidable, and not merely fictitious or colorable, the claimant is entitled to a plenary suit. Shea v. Lewis, supra; Johnston v. Spencer, supra; Cooney v. Collins, supra; Brenner v. Sawyer, supra; In re Vallozza, supra; In re Lummus, supra.

"One who is a bona fide creditor and receives payment on the debt owed to him does not take or keep possession of what he so receives in the right of the bankrupt but in his own right. That right may be subordinate to the right of a trustee in bankruptcy to recover under Sec. 60b, Bankr.Act, 11 U.S.C.A. § 96(b), because it is a voidable preference but if the status of the third party as an actual creditor is established and the fact of payment before petition filed is shown, there is no summary jurisdiction supportable on the ground that what the trustee seeks came into the actual or constructive possession of the court on the filing of the bankruptcy petition. It had before then, on the contrary, not only passed out of the possession of the bankrupt but into the possession of one who took in no sense in behalf of the bankrupt. Under such circumstances the adverse claim is not colorable; and there is no summary jurisdiction to be invoked, in the absence of consent, to recover bona fide payments made on an actual debt prior to the filing of the bankruptcy petition.

(Citations.)" In re Quan Weing, 2 Cir., 104 F.2d 112, loc. cit. 114.

 We conclude on consideration of the record that neither Reinholdt and Gardner's claims of right to retain their possession of the bankrupt's cash and securities, nor Schaffer's claims of right to hold and sue on the check in his possession are merely colorable or fictitious claims, but that they constitute adverse claims, not determinable in summary proceedings in bankruptcy. Though the parties so nearly agree as to the facts in the case, the controversies as to the law and its application are substantial and cannot be adjudicated otherwise than by a court of competent jurisdiction. Such adjudication when made in the state court will not, if Schaffer succeeds, create a lien in Reinholdt and Gardner's favor such as would result from running an attachment on the assets in their hands. The security they hold to secure them against their contingent liability would merely become security for the same liability, at present contingent, but which may be made certain by adjudication.

Other contentions, though fully considered, need not be further discussed.

Regrettable as the protraction of this litigation may be, the controversies are real and the decree appealed from must be reversed with direction to dismiss for want of jurisdiction.